UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, </br></br> Plaintiff, </br></br> v. </br></br> $396,589 IN U.S. FUNDS ASSOCIATED WITH ROYAL PEARLS GENERAL TRADING, </br></br> Defendant. | Civil Action No. 17-587 (RBW) |

## MEMORANDUM OPINION

The government brings this civil forfeiture action in rem against the defendant property, $396,589 in U.S. funds (the "defendant funds"), arising out of an investigation of Royal Pearls General Trading ("Royal Pearls") and several other entities. See Verified Complaint for Forfeiture In Rem ("Compl.") at 1. Currently pending before the Court is the Plaintiff's Motion for Entry of Default Judgment and Order of Forfeiture ("Gov't's Mot."). Upon careful consideration of the relevant submissions,[1] the Court concludes that it must grant the government's motion and order the forfeiture of the defendant funds to the government.

### I. BACKGROUND

The following allegations are taken from the government's Complaint, which "arises out

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the government's Memorandum of Law in Support of Plaintiff's Motion for Entry of Default Judgment and Order of Forfeiture ("Gov't's Mem."), ECF No. 13-1; (2) a letter from Amr Rabie, General Manager, PT Petro, to the Court ("PT Petro Letter") (May 7, 2017), ECF No. 5; (3) PT Petro's Petition for Remission or Mitigation of a Criminal or Civil Forfeiture Action by the United States Department of Justice ("PT Petro Pet."), ECF No. 6; (4) the government's Notice ("Gov't's Notice") (June 12, 2017), ECF No. 7; (5) the government's Declaration of Publication ("Publication Decl."), ECF No. 9; (6) the government's Affidavit in Support of Default ("Default Aff."), ECF No. 10; (7) the government's Amended Affidavit in Support of Default, ECF No. 12; (6) the Government's Response to Show Cause Order ("Gov't's Resp."), ECF No. 15; and (8) the government's Supplemental Affidavit in Support of Default ("Supp. Default Aff."), ECF No. 17.

of an investigation by the Federal Bureau of Investigation ('FBI') into a scheme operated by Premium Technology Petroleum Services ('PT Petro'), Royal Pearls . . . , MKS International Group ('MKS'), Kambiz Rostamian [ ], and [other] co-conspirators to obtain specialized petroleum parts from a U.S. manufacturer and illegally export those parts . . . to end users in the Republic of Iran." Compl. ¶ 1. "PT Petro claims to be a petroleum service company based in Egypt," id. ¶ 25; "Royal Pearls claims to be a laboratory equipment trading company based in Dubai, UAE," id. ¶ 39; "MKS claims to be a trading company based in Tehran, Iran," id. ¶ 47; and Rostamian claims to be the owner and CEO of both Royal Pearls and MKS, id. ¶¶ 42, 45, 52–53.

"On March 6, 2014, PT Petro issued Purchase Order 40008 to U.S. Company 1 to purchase . . . [certain] coiled tubing products," which "are highly specialized pieces of equipment used by large scale petroleum operations." Id. ¶ 27. "The total purchase price of these parts was $1,112,885.00 in U.S. funds." Id. "According to the payment terms of Purchase Order 40008, PT Petro was required to pay [thirty percent] of the total purchase price in advance and the full amount of each item prior to shipment." Id. ¶ 28. "On July 15, 2014, PT Petro wired $333,662.50 in U.S. dollars from a bank in Egypt, to U.S. Company 1's bank account in the United States as advance payment for Purchase Order 40008." Id. ¶ 29. Then, "[o]n or about April 1, 2015, U.S. Company 1 and PT Petro coordinated a partial shipment of some of the items from Purchase Order 40008," and, "[o]n April 7, 2015, PT Petro wired an additional $62,926.50 in U.S. funds from a bank in Qatar to U.S. Company 1's bank account in the United States." Id. ¶ 30. The funds wired by PT Petro to U.S. Company 1 on July 15, 2014, and April 7, 2015,

2

"which were subsequently seized by law enforcement pursuant to a seizure warrant, represent the . . . [d]efendant [f]unds." Id.; see also id. ¶ 29.

"In early 2015, PT Petro submitted a U.S. Export Control Law Compliance form in preparation to receive the shipment of the above identified parts," which "stated that the destination country for the items was Egypt." Id. ¶ 32. "However, PT Petro subsequently requested that U.S. Company 1 ship [certain parts] . . . to Royal Pearls at a P.O. Box in Dubai, UAE." Id. ¶ 33. The government alleges that, ultimately, "MKS [wa]s the [e]nd [u]ser for the [p]etroleum [p]arts [o]rder," id. at 10, and that "PT Petro and Royal Pearls falsified shipper export documents when stating the end user of the petroleum parts," id. ¶ 52.

"On February 3, 2017, the Department of Treasury Office of Foreign Assets Control [('OFAC')] designated Royal Pearls, MKS [ ], and Rostamian as 'Specially Designated Nationals' . . . of Iran." Id. ¶ 46. OFAC reported that "MKS . . . is . . . involved in procuring controlled and other technology and materials to support Iran's ballistic missile programs" and has "utilized multiple front companies in order to circumvent export laws and sanctions." Id. It further reported that "Royal Pearl[s] . . . is a front company for MKS [ ] that has worked . . . to procure components for Iran's ballistic missile program," and "Rostamian . . . act[ed] for or on behalf of MKS [ ] and Royal Pearl[s]," including by "act[ing] as a direct intermediary to purchase parts through MKS." Id.

On March 31, 2017, the government filed this civil forfeiture action against the defendant funds. See Compl. at 1. On April 3, 2017, the Clerk of the Court issued a warrant for arrest in rem of the defendant funds. See Warrant for Arrest In Rem (Apr. 3, 2017), ECF No. 2. Then, beginning on April 20, 2017, the government published notice of this action on its public

forfeiture website, www.forfeiture.com, for thirty consecutive days.  See Publication Decl., Attachment ("Att.") 1 (Notice of Forfeiture Action).  Additionally, "[o]n or about April 20, 2017, the government served notice [of this action] via email and package delivery to Royal Pearls . . . , []PT Petro[], and National Oilwell Varco[,]"[2] Default Aff. ¶ 5, and via email to MKS, see Gov't's Mem. at 5.  "On June 30, 2017, the government again served notice on . . . Royal Pearls via international package delivery."  Id.  Thereafter, on September 7, 2017, the government moved for "ent[ry] [of a] [d]efault against the defendant property and all parties that might have an interest in it," Default Aff. ¶ 9, which the Clerk of the Court granted on September 8, 2017, see Default at 1 (Sept. 8, 2017), ECF No. 11.  The government then filed its motion for a default judgment on September 22, 2017.  See Gov't's Mot. at 1.

## II.    STANDARD OF REVIEW

Rule 55 sets forth a two-step process for a party seeking a default judgment.  Fed. R. Civ. P. 55.  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Second, "the party must apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2).  Despite a plaintiff's ability to acquire a judgment by default, there are "strong policies favoring the resolution of genuine disputes on their merits."  Jackson v. Beech, 636 F.2d 831, 835 (D.C. Cir. 1980); see Peak v. District of Columbia, 236 F.R.D. 13, 15 (D.D.C. 2006) (acknowledging the inherent unfairness of awarding a judgment

---

[2] The Court notes that the government did not reference National Oilwell Varco in the Complaint or in any of its other submissions, but a letter sent by a representative of PT Petro to this Court and filed on the docket in this case represents that "[P]urchase [O]rder 40008 [was] issued by [PT Petro] to NOV [(National Oilwell Varco)]."  PT Petro Letter at 1 (emphasis added).  Thus, the Court presumes that National Oilwell Varco is "U.S. Company 1" as referred to in the Complaint.  See, e.g., Compl. ¶ 27 (alleging that "PT Petro issued Purchase Order 40008 to U.S. Company 1").

4

against a party for mere filing delays). Therefore, a "default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party." Jackson, 636 F.2d at 836 (quoting H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe, 432 F.2d 689, 691 (D.C. Cir. 1970)); see Teamsters Local 639–Emp'rs Health Tr. v. Boiler & Furnace Cleaners, Inc., 571 F. Supp. 2d 101, 107 (D.D.C. 2008) (Walton, J.) ("[W]hen the adversary process has been halted because of an essentially unresponsive party[,] the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights." (second alteration in original) (quoting Peak, 236 F.R.D. at 15)).

"The determination of whether [a] default judgment is appropriate is committed to the discretion of the trial court." Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC, 531 F. Supp. 2d 56, 57 (D.D.C. 2008). "Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint." Boland v. Elite Terrazzo Flooring, Inc., 763 F. Supp. 2d 64, 67 (D.D.C. 2011); see Adkins v. Teseo, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) ("A defaulting defendant is deemed to admit every well-pleaded allegation in the complaint."). However, "the Court must 'make an independent determination of the sum to be awarded' pursuant to the judgment 'unless the amount of damages is certain.'" Boland v. Yoccabel Constr. Co., 293 F.R.D. 13, 17 (D.D.C. 2013) (Walton, J.) (quoting Adkins, 180 F. Supp. 2d at 17). "'[P]laintiff[s] must prove [their] entitlement to the amount of monetary damages requested' using 'detailed affidavits or documentary evidence' on which the court may rely." Boland v. Providence Constr. Corp., 304 F.R.D. 31, 36 (D.D.C. 2014) (quoting Fanning v. Permanent Sol. Indus., Inc., 257 F.R.D. 4, 7 (D.D.C. 2009)).

## III.     ANALYSIS

The government argues that it is entitled to a default judgment against the defendant funds because "[a]ll process that was due was fully issued in this action and [ ] returned according to law," as "notice by publication and notice to all known potential claimants was properly given, as required by . . . Supplemental Rule" for Admiralty or Maritime Claims and Asset Forfeiture Actions G ("Rule G"), Gov't's Mem. at 8; "[n]o individual or entity . . . has filed a [verified] claim or pleading to challenge the forfeiture of the defendant [funds]," id. at 9; and "the time for filing a claim has expired," id.  The government further argues that it is entitled to civil forfeiture in rem of the defendant funds "pursuant to 18 U.S.C. § 981(a)(1)(C) [(2012)], as property that constitutes or is derived from proceeds traceable to violations of the International Emergency Economic Powers Act ('IEEPA')," and "18 U.S.C. § 981(a)(1)(A)[,] as property involved in money laundering transactions and attempted money laundering transactions." Id. at 1.  For the following reasons, the Court agrees that the government is entitled to a default judgment against the defendant funds and that the defendant funds are subject to forfeiture to the government under § 981.

### A.     Procedural Prerequisites to Forfeiture In Rem

Rule G "governs [] forfeiture action[s] in rem arising from a federal statute." Supp. R. G(1).  Relevant here, Rule G requires the government to (1) file a verified complaint that, inter alia, "state[s] sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial," Supp. R. G(2)(a), (f); (2) "publish[] notice of the action within a reasonable time after filing the complaint," which may be done by "posting a notice on an official internet government forfeiture site for at least [thirty] consecutive days," Supp. R.

G(4)(a)(i), (iv)(C); and (3) "send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government" "by means reasonably calculated to reach the potential claimant," Supp. R. G(4)(b)(i), (iii)(A). The Rule also provides that "the clerk must issue a warrant to arrest the property if it is in the government's possession, custody, or control." Supp. R. G(3)(b)(i).

Here, the Court concludes that the government has demonstrated that the applicable requirements of Rule G have been satisfied. First, the government filed a verified complaint satisfying the requirements of Rule G(2), see Supp. R. G(2),[3] and, the Clerk of the Court issued a warrant to arrest the property in accordance with Rule G(3), see Warrant for Arrest In Rem (Apr. 3, 2017), ECF No. 2; Supp. R. G(3)(b)(i). Then, on April 20, 2017, within a reasonable time after filing its complaint, the government published notice of this action on www.forfeiture.com, an official government forfeiture website, for thirty consecutive days in accordance with Rule G(4)(a). See Publication Decl., Att. 1 (Notice of Forfeiture Action); Supp. R. G(4)(a)(i), (iv)(C).[4] Around the same time, the government sent notice of this action and a copy of its

---

[3] Rule G(2) provides that "[t]he complaint must: (a) be verified; (b) state the grounds for subject-matter jurisdiction, in rem jurisdiction over the defendant property, and venue; (c) describe the property with reasonable particularity; (d) if the property is tangible, state its location when any seizure occurred and—if different—its location when the action [wa]s filed; (e) identify the statute under which the forfeiture action is brought; and (f) state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Supp. Rule G(2). Based on its review of the government's Complaint, the Court finds that the Complaint satisfies each of these requirements. Although the Court previously issued a show cause order requiring the government to address a potential defect in the Complaint's verification, see Order at 2 (Aug. 22, 2018), ECF No. 14, based on the government's representations in response to its Order, see generally Gov't's Resp., the Court is satisfied that the Complaint was properly verified as required by Rule G(2)(a), see Order at 2–3 (Sept. 11, 2018), ECF No. 16 (concluding that "despite the erroneous name in the body of the Complaint's verification, the verification satisfies . . . the requirement of [Rule G] that a complaint in a forfeiture action in rem 'be verified'").

[4] Rule G(4)(a) provides that the "notice must: (A) describe the property with reasonable particularity; (B) state the times under Rule G(5) to file a claim and to answer; and (C) name the government attorney to be served with the claim and answer." Rule G(4)(a)(ii). The government's notice satisfied each of these requirements. See Publication Decl., Att. 1 (Notice of Forfeiture Action) at 1 (describing the property as "$396,589.00 in Funds

(continued . . . )

Complaint to PT Petro, Royal Pearls, MKS, and National Oilwell Varco—all of the entities allegedly involved in the "scheme . . . [to] illegally export [specialized petroleum] parts . . . to end users in . . . Iran," Compl. ¶ 1[5]—in accordance with Rule G(4)(b).  See Default Aff. ¶ 5 (representing that "the government served notice via email and package delivery to Royal Pearls[,] . . . []PT Petro[,] and National Oilwell Varco"); Gov't's Mem. at 5 (representing that the government served notice to MKS via email); Supp. Default Aff. ¶ 8 (representing that "the government sent [to each claimant] a copy of the complaint, a dated cover letter, a notice of forfeiture action, the Code of Federal Regulations section governing a Petition for Remission, and a blank Petition for Remission form").

Moreover, the Court concludes that the notices sent by the government to the potential claimants were "sent by means reasonably calculated to reach the potential claimants" as required by Rule G(4)(b).  Supp. R. G(4)(b)(iii)(A).  Here, the government represents that it sent notices to potential claimants via mail and email to addresses known to the government, see Default Aff. ¶ 5; Gov't's Mem. at 5–6, and received confirmations of receipt from PT Petro, MKS, and U.S. Company 1, see Gov't's Mem. at 6.  Although "[t]he notices sent via package delivery and email [to Royal Pearls] were all returned undelivered," id., the Court nonetheless concludes that the government's efforts to send notice to Royal Pearls were reasonably

---

( . . . continued)
Associated With Royal Pearls General Trading (16-FBI-004075) seized on July 14, 2016, in Houston, TX," and providing that "[a]ny person claiming a legal interest in the [ ] [p]roperty must file a verified [c]laim with the court within [sixty] days from the first day of publication (April 20, 2017) of this Notice . . . and an [a]nswer to the complaint . . . within [twenty-one] days thereafter," and "[t]he verified [c]laim and [a]nswer must be . . . served upon Assistant United States Attorney Zia Faruqui, 555 4th Street, NW, Washington, DC 20530").

[5] Although the government does not represent that it sent notice of this action to Rostamian, see generally Default Aff.; Gov't's Mem., the Court finds that the notices sent to Royal Pearls and MKS were adequate to notify Rostamian of this action, given that Rostamian claims to be the owner and CEO of both entities, see Compl. ¶¶ 42, 45, 52–53.

calculated to reach Royal Pearls. Namely, the government "sent direct notice to Royal Pearls[,] to all known addresses associated with it, including the email address Royal Pearls used to communicate with PT Petro and the physical address Royal Pearls listed on its website and in the contract with PT Petro," id., and once its notices were returned undelivered, it "sought out any and all additional addresses it could find for Royal Pearls[] and resent the notice to those addresses," id. at 8. These efforts to notify Royal Pearls of this action, although ultimately unsuccessful, are sufficient to satisfy Rule G(4)(b), given the government's simultaneous effort to notify the public at large by posting notice of this action on its official forfeiture website. See United States v. Funds up to & Including the Amount of $56,634 in U.S. Currency on Deposit in Banesco Int'l, Pan., Account # 201000274785, Titled in the Name of Inversiones Cedeno C.A., and/or Prop. Traceable Thereto, 79 F. Supp. 3d 112, 114 (D.D.C. 2015) (concluding that multiple unsuccessful attempts to obtain contact information for potential claimant were sufficient to satisfy Rule G(4)(b), given that the government posted notice on its public forfeiture website); see also Hammel v. Dep't of Justice, Civ. Action No. 12-2932, 2013 WL 1363861, at *3 (D.S.C. Apr. 3, 2013) (acknowledging "case law . . . concluding that multiple address searches, combined with mailings to the found addresses and publication in a newspaper of general publication is normally notice that is 'reasonably calculated' to reach an interested party" (alteration in original) (citation and internal quotation marks omitted)).[6]

---

[6] The Court concludes that the government's notices also satisfied the remaining requirements of Rule G(4)(b). First, the notices, which were sent on or about April 20, 2017, see Default Aff. ¶ 5, satisfy Rule G(4)(b)(i)'s requirement that such notices be sent within sixty days after the government posted notice of this action on an official government forfeiture website, which was on April 20, 2017, see Publication Decl., Att. 1 (Notice of Forfeiture Action); see also Supp. R. G(4)(b)(i) (requiring that the notices be sent "before the end of the time for filing a claim under Rule G(5)(a)(ii)(B)"); Supp. R. G(5)(a)(ii)(B) (requiring that claims be filed "no later than [sixty] days after the first day of publication on an official internet government forfeiture site"). Additionally, the
(continued . . .)

Finally, as the government notes, see Gov't's Mem. at 9, no person or entity has filed a claim to or sought to defend the defendant funds in this Court. Although a representative of PT Petro filed with the Court a letter and a petition for remission seeking return of the funds, see PT Petro Letter; PT Petro Pet., as the government informed that representative, "these documents do not constitute a claim under [ ] Rule G(5)," Gov't's Notice, Exhibit ("Ex.") 1 (Letter from Kyle Bateman, Special Assistant United States Attorney, to Amr Rabie, General Manager, PT Petro (June 12, 2017) ("Bateman Letter")); see Supp. R. G(5)(a)(i)(C) (providing that a claim must, inter alia, "be signed by the claimant under penalty of perjury"), and "[r]emission . . . [is an] administrative remed[y] . . . administered by the Department of Justice" that is nonjusticiable, United States v. Sum of $309,500,000, 85 F. Supp. 3d 111, 113, 114 n.2, 118 (D.D.C. 2015). Moreover, the time for filing a claim has expired. See Supp. R. G(5)(a)(ii)(A)–(B) (providing that a "claim must be filed: (A) by the time stated in a direct notice sent under Rule G(4)(b); [or] (B) if notice was published but direct notice was not sent, . . . no later than [sixty] days after the first day of publication on an official internet government forfeiture site").[7] For all of these

---

( . . . continued)
notices satisfied Rule G(4)(b)(ii), which provides that "[t]he notice[s] must state: (A) the date when the notice is sent; (B) a deadline for filing a claim, at least [thirty-five] days after the notice is sent; (C) that an answer or motion under Rule 12 must be filed no later than [twenty-one] days after filing the claim; and (D) the name of the government attorney to be served with the claim and answer." Supp. R. G(4)(b)(ii); see Supp. Default Aff. ¶¶ 9–11 (representing that the notices sent to the potential claimants (1) indicated the dates they were sent, (2) stated that any claim must be filed "within [thirty-five] days of the [g]overment[']s sending of th[e] [n]otice," (3) stated that "claimants must serve and file [a]nswers to the Complaint[] . . . within [twenty-one] days after filing their [ ] [c]laims," and (4) "w[ere] electronically signed by counsel for the government and listed his mailing address").

[7] In accordance with Rule G(4)(b)(ii)(B), the government's notices to the potential claimants stated that the claimants must file any claim "within [thirty-five] days of the [g]overment[']s sending of th[e] [n]otice," Supp. Default Aff. ¶ 9, and the notices were sent on April 20, 2017, see Default Aff. ¶ 5. Thus, the deadline for filing a claim was May 25, 2017. Even calculating the deadline from the date the last notice to Royal Pearls was sent, June 30, 2017, see Gov't's Mem. at 5, any claim had to be filed by August 4, 2017. And, as to any persons to whom the government did not send notice, the deadline was June 19, 2017, which is sixty days after April 20, 2017, the date the government posted notice on www.forfeiture.com. See Publication Decl., Att. 1 (Notice of Forfeiture Action).

(continued . . . )

10

reasons, the Court concludes that the government has satisfied all of the applicable procedural prerequisites for forfeiture of the defendant funds under Rule G and that the Clerk of the Court's entry of a default against the defendant funds was appropriate.

B. Forfeiture Under 18 U.S.C. § 981(a)(1)(A) and (C)

As already explained, "[a] defaulting defendant is deemed to admit every well-pleaded allegation in the complaint." Adkins, 180 F. Supp. 2d at 17. Having concluded that the Clerk of the Court's entry of a default against the defendant funds was proper, the Court deems the allegations in the government's Complaint to be admitted. Upon reviewing these allegations, the Court concludes that these allegations establish the facts necessary to warrant forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) and (C).

Under § 981(a)(1)(C), "property that 'constitutes or is derived from proceeds traceable to' violations of . . . [section 206 of] the IEEPA is subject to forfeiture." In re 650 Fifth Avenue & Related Props., 830 F.3d 66, 87 (2d Cir. 2016) (first quoting 18 U.S.C. § 981(a)(1)(C); then citing id. § 1956(c)(7)(D); then citing 50 U.S.C. § 1705 (2012)). Section 206 of the IEEPA makes it "unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition issued under" the IEEPA. 50 U.S.C. § 1705(a). Relevant here, the orders and regulations incorporated by the IEEPA prohibit "the exportation from the United States to Iran[] . . . of any goods, technology[,] . . . or services" without a license or other authorization, Exec. Order No. 12,959, 60 Fed. Reg. 24,757, 24,757

---

( . . . continued)
Although the government, in response to PT Petro's letter and petition for remission filed with the Court, sent PT Petro a letter, dated June 12, 2017, representing that it "w[ould] not object based on untimeliness should [PT Petro] file a proper claim within [twenty] days of the date of [the government's] letter," Gov't's Notice, Ex. 1 (Bateman Letter), PT Petro did not file a claim within that period or at any time thereafter.

(May 6, 1995), as well as "any transaction . . . that evades or avoids[] [or] has the purpose of evading or avoiding . . . any of the [regulation's] prohibitions," 31 C.F.R. § 560.203(a) (2018), including "the exportation . . . of any goods . . . to a person in a third country undertaken with knowledge or reason to know that . . . [s]uch goods . . . are intended specifically for supply, transshipment, or reexportation, directly or indirectly, to Iran," id. § 560.204(a).

Here, the government alleges that the defendant funds are payments by PT Petro to U.S. Company 1 for the purchase of specialized petroleum parts, see Compl. ¶¶ 27–31, made in furtherance of a conspiracy to "illegally export those parts . . . to end users in . . . Iran [ ] in violation of the . . . []IEEPA[]," id. ¶ 1. Specifically, it alleges that, in furtherance of the conspiracy, "PT Petro issued Purchase Order 40008 to U.S. Company 1," id. ¶ 27, and "wired [the defendant funds] . . . to U.S. Company 1's bank account . . . as [ ] payment for Purchase Order 40008," id. ¶ 29; see also id. ¶ 30. It further alleges that PT Petro "submitted a U.S. Export Control Law Compliance form . . . [that] stated that the destination country for the items [subject to Purchase Order 40008] was Egypt," id. ¶ 32, but "subsequently requested that U.S. Company 1 ship [certain parts] . . . to Royal Pearls," id. ¶ 33, which "is a front company for MKS," an Iranian company "involved in procuring . . . technology and materials to support Iran's ballistic missile programs," id. ¶ 46. Thus, "MKS [wa]s the [e]nd [u]ser for the [p]etroleum [p]arts [o]rder," id. at 10, and "PT Petro and Royal Pearls falsified shipper export documents when stating the end user of the petroleum parts," id. ¶ 52. These allegations and the various other factual allegations supporting them, including that the alleged "co[-]conspirators failed to seek licenses [for the exports] from . . . []OFAC[,]" id. ¶ 4, are sufficient to establish that Purchase Order 40008 constituted a "transaction . . . that evade[d] or avoid[ed] [or] ha[d] the

12

purpose of evading or avoiding . . . the [regulation's] prohibition" against "the exportation . . . of any goods . . . to a person in a third country undertaken with knowledge or reason to know that . . . [s]uch goods . . . are intended specifically for supply, transshipment, or reexportation, directly or indirectly, to Iran," 31 C.F.R. §§ 560.203(a), .204(a). And, because the defendant funds are payments made pursuant to Purchase Order 40008, see Compl. ¶¶ 29–30, they are property that "constitutes or is derived from proceeds traceable to a violation of" the IEEPA, and thus, are subject to forfeiture under 18 U.S.C. § 981(a)(1)(C).[8]

Additionally, the government's allegations establish that the defendant funds are subject to forfeiture under § 981(a)(1)(C), as they are derived from proceeds traceable to violations of 18 U.S.C. § 1956. Section 1956 makes it unlawful to "transport[], transmit[], or transfer[] . . . a monetary instrument or funds . . . to a place in the United States from or through a place outside the United States . . . with the intent to promote the carrying on of specified unlawful activity," 18 U.S.C. § 1956(a)(2)(A), or to conspire to do so, see id. § 1956(h). The government alleges that PT Petro wired the defendant funds from banks in Egypt and Qatar to U.S. Company 1's bank account in the United States. See Compl. ¶¶ 29–31. Additionally, as already discussed, it alleges that these payments constitute or are derived from proceeds traceable to IEEPA violations, see, e.g., id. ¶ 59, which are "specified unlawful activit[ies]" under § 1956, see 18 U.S.C. § 1956(c)(7)(D) (defining "specified unlawful activity" to include offenses under "section 206 . . . of the [IEEPA]"). Thus, the government's well-pleaded allegations are sufficient to

---

[8] The government's Complaint also asserts that the co-conspirators' conduct violated the Export Administration Regulations ("EARs"), see Compl. ¶ 1, which it asserts are incorporated into the IEEPA, see id. ¶¶ 10–11. However, because the Court concludes that the government's allegations establish violations of the IEEPA based on violations of other legal authorities incorporated by the statute, the Court need not determine whether the allegations also establish a violation of the IEEPA based on violations of the EARs.

establish that the defendant funds are derived from proceeds traceable to a violation of § 1956(a)(2)(A), and consequently, § 981(a)(1)(A) provides an alternative ground for forfeiture of the defendant funds.[9]

### IV. CONCLUSION

For the foregoing reasons, the Court concludes that the government has demonstrated that the procedural prerequisites for civil forfeiture of the defendant funds have been satisfied, that the defendant funds are subject to civil forfeiture under 18 U.S.C. § 981(a)(1)(A) and (C), and that the government is entitled to the amount of funds it seeks to forfeit. Thus, the Court must grant the government's motion for default judgment and order that the defendant funds be forfeited to the government.

**SO ORDERED** this 4th day of October, 2018.

REGGIE B. WALTON
United States District Judge

---

[9] The Complaint's allegations, which are supported by a detailed declaration from Special Agent Katherine Tenaglia, see Gov't's Resp., Ex. 1 (Declaration of Special [FBI] Agent Katherine Tenaglia (Sept. 6, 2018)), are also sufficient to demonstrate that there exists a "substantial connection between the [defendant funds] and the [alleged criminal] offense[s]" as required by 18 U.S.C. § 983(c)(3), see United States v. Proceeds of Drug Trafficking Transferred to Certain Foreign Bank Accounts, 757 F. Supp. 2d 24, 28 (D.D.C. 2010) (concluding that the "substantial connection" requirement of § 983(c)(3) was satisfied where "the government ha[d] demonstrated a clear path from proceeds from the sale of narcotics in the United States to the [defendant] funds held in [ ] Columbian accounts through the transactions witnessed and recorded by [a] DEA [o]peration").